***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***KRISTY COOKSON,*** | ) | |
| | ) | |
| ***Plaintiff*** | ) | |
| | ) | |
| ***v.*** | ) | ***No. 2:11-cv-460-DBH*** |
| | ) | |
| ***CITY OF LEWISTON, et al.,*** | ) | |
| | ) | |
| ***Defendants*** | ) | |

***RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT***

The plaintiff in this action alleging excessive use of force has sued the City of Lewiston, its police chief, and three of its police officers. All of the defendants now move for summary judgment. I recommend that the court grant the motion.

## I. Applicable Legal Standard

### A. Fed. R. Civ. P. 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

**B. Local Rule 56**

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each

supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

On the evening of December 1, 2009, defendant Lewiston police officer Raymond Vega attempted to stop a pickup truck that was being operated erratically by the plaintiff, and which he recognized from his arrest of the plaintiff for operating under the influence one week earlier. Defendants' Statement of Material Facts ("Defendants' SMF") (ECF No. 20) ¶ 1; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (ECF No. 22) ¶ 1. Vega used his cruiser's emergency lights, spotlight, and siren while trying to get the truck to stop, but the plaintiff refused to pull over. *Id*. ¶ 2.

The plaintiff attempted to elude Vega by operating her vehicle in a dangerous and reckless manner through the city, including reaching speeds of 80 miles per hour, ignoring traffic signals, driving on the sidewalk through a road construction area, and operating on a major one-way street in the wrong direction. *Id.* ¶ 3. Defendant Lewiston police officer Keith Caouette, who was also operating a marked police cruiser, joined the high speed pursuit behind Vega's cruiser. *Id*. ¶ 4. During the pursuit, Caouette was in position to observe the dangerous operation of the plaintiff's vehicle and the resulting danger she posed to other motorists and to pedestrians waiting to cross Central Avenue in the area of Bates College. *Id*. ¶ 5.

The plaintiff lost control of her vehicle at a high rate of speed when she failed to negotiate a curve on Central Avenue, skidding off the road into the parking lot of an apartment building and crashing into a parked car. *Id*. ¶ 6. After the initial crash, the plaintiff's vehicle was lodged into the parked vehicle it had struck, but the plaintiff immediately began efforts to free her vehicle from the accident wreckage. *Id*. ¶ 7. Vega parked his cruiser and ran to the driver's side of the plaintiff's vehicle, drawing his service pistol because he believed that the plaintiff represented a serious threat to the safety of others in the area if she could free her vehicle and resume the dangerous operation he had witnessed. *Id*. ¶ 8.

Vega began shouting orders to the plaintiff to turn off the engine and get out of the vehicle, but she ignored his commands and continued her efforts to free her vehicle from the wreckage, revving the engine at a high rate of speed, spinning the tires, and rocking the pickup back and forth. *Id*. ¶ 9. Vega saw Caouette arrive on the scene and begin to approach the rear of the vehicle on foot when it suddenly lurched backward and began to back up. *Id*. ¶ 10. Believing that Caouette was in danger of being struck by the vehicle, Vega fired two shots into the left front tire in an attempt to disable the vehicle. *Id*. ¶ 11.

As the plaintiff continued to move her vehicle back and forth violently, both officers believed that they were in imminent danger of being run over or pinned against adjacent structures by the plaintiff's vehicle as she attempted to escape, and both fired multiple shots at the plaintiff in an attempt to stop her operation of the vehicle. *Id.* ¶ 13. At the time the officers fired at the plaintiff, her vehicle was in motion. *Id.* ¶ 14. After the officers fired at her, the plaintiff continued to operate the vehicle and attempt to escape, driving in reverse across the lawn and driveway of the apartment building until crashing into some trees at the top of an embankment. *Id.* ¶ 15.

Both officers then ran to the vehicle, believing at that time that none of the bullets they had fired had struck her. *Id.* ¶ 16. As Vega reached the plaintiff's vehicle, shouting orders to turn it off, the plaintiff continued to spin the tires and rev the engine, showing no signs of having been injured and still appearing intent on escaping. *Id.* ¶ 17. Vega reached into the vehicle through the shattered driver's window and tried to take physical control of the plaintiff, but she resisted his efforts, pulling away from him and kicking at him. *Id.* ¶ 18.

Seeing that Vega was unsuccessful at gaining control of the plaintiff, Caouette told him to stand aside and then deployed his Taser through the open window, striking the plaintiff and briefly immobilizing her. *Id.* ¶ 19. After the initial Taser cycle was complete, Caouette reached inside the vehicle and unlocked the door. *Id.* ¶ 20. The plaintiff got out of the vehicle through the door upon Caouette's command to do so. *Id.*

Defendant Lewiston police officer William Rousseau arrived at the scene, got out of his cruiser, and approached the plaintiff's pickup truck, which had backed into the trees and was not moving. *Id.* ¶ 21. As Rousseau approached the vehicle, he observed Caouette giving the plaintiff instructions to exit the vehicle, with the darts and wires from the Taser still attached to

her. *Id.* ¶ 22. As he reached the driver's side of the vehicle, Rousseau heard the plaintiff say that she had been shot as she got out of the vehicle and Caouette had her lie on the ground. *Id.* ¶ 23. Rousseau placed his handcuffs on the plaintiff, for officer safety, assessed her injuries, and, finding a wound on the left side of her chin, ran to his cruiser to retrieve a medical kit while other officers removed the handcuffs and began administering first aid to the plaintiff as she was turned onto her back. *Id.* ¶ 24.

The physical evidence at the scene, the statements of Caouette and Vega, and the statements provided to the Attorney General's investigators by civilian eyewitnesses with a clear view of the scene all supported the reconstructionist's conclusion that the plaintiff freed her vehicle from the initial crash debris and moved rapidly in reverse across the lawn and driveway of the apartment building, posing a clear risk that she could run over the officers who were on foot near the vehicle. *Id.* ¶ 32.

## III. Discussion

### A. Rousseau and Bussiere

The defendants first argue that the plaintiff did not respond to their arguments with respect to any liability of defendant Rousseau, or defendant Bussiere in his individual capacity, and ask that summary judgment be entered in their favor for that reason. Defendants City of Lewiston, Chief Bussiere, Officers Vega, Rousseau and Caouette's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Defendants' Reply) (ECF No. 23) at 1. The plaintiff's memorandum of law and statement of material facts make no case for Rousseau's liability, merely including his name in the caption of a section of the memorandum in which only the actions of Vega and Caouette are discussed and noting in the statement that Rousseau rendered medical aid after the arrest and that his training records are non-specific. Plaintiff's

Objection to Defendants' Motion for Summary Judgment ("Opposition") (ECF No. 21) at 3-9; Plaintiff's Responsive SMF ¶¶ 26, 48. That absence of any evidence of liability, rather than the plaintiff's failure to argue this point, is why summary judgment should be entered for Rousseau on all counts asserted against him. *See, e.g., Forbis v. City of Portland*, No. 02-135-P-H, 2003 WL 21250675, at *14 (D. Me. May 29, 2003).

The plaintiff discusses failure to train as a basis for municipal liability on her claims, Opposition at 9-12, and she alleges that "failure to follow through with a training policy that has been promulgated is well within the purview of Defendant Bussiere as chief policy maker for the Lewiston Police Department." *Id*. at 12. This is a sufficient mention of Bussiere to require the court to consider the merits of the plaintiff's argument with respect to him.

**B. Counts I and IV**

Counts I and IV assert claims under 42 U.S.C. § 1983 and the Maine Civil Rights Act. Complaint ¶¶ 41-44, 53-54. In this court, both claims are governed by the same legal standard. *Forbis v. City of Portland*, 270 F.Supp.2d 57, 61 (D. Me. 2003). The complaint alleges violation of unspecified constitutional rights. The defendants contend that their actions were reasonable under the Fourth Amendment. Motion at 4-14. The plaintiff does not suggest that any other specific constitutional right is alleged to have been violated. Opposition at 3-6.

As this court has stated:

> "Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person." *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) (citing U.S. Const. amend. IV). "The Fourth Amendment is implicated where an officer exceeds the bounds of reasonable force in effecting an arrest or investigatory stop." *Id*. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court applied an objective reasonableness standard to the use of force by a law enforcement officer during an arrest and held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . .

> of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. at 395. It held that three factors are relevant to determine the reasonableness of the force: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396; *Raiche*, 623 F.3d at 36. At the same time, the Supreme Court has observed that "judges should be cautious about second-guessing a police officer's assessment made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, __ U.S. __, 132 S.Ct. 987, 181 L.Ed.2d 966, 992 (2012). In *Graham*, the Court wrote that reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396-97.

*Cote v. Town of Millinocket*, __ F.Supp.2d __, 2012 WL 4510664, at *39 (D. Me. Sept. 28, 2012).

The use of deadly force is reasonable when a suspect "poses a significant threat of death or serious physical injury" to the officers involved. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). Here, the plaintiff argues that the officers used deadly force three times: when Vega fired into the tire of her truck, when Vega and Caouette shot at her, and when Caouette shot her with his Taser. Opposition at 4.

With respect to the shooting of the tire, case law establishes that, independent of the question of whether such activity constitutes the use of deadly force, no seizure has taken place when the shots are fired in an unsuccessful attempt to stop a vehicle, so no Fourth Amendment claim will lie. *See, e.g., Adams v. City of Auburn Hills*, 336 F.3d 515, 520 (6th Cir. 2003); *Cole v. Bone*, 993 F.2d 1328, 1332-33 (8th Cir. 1993); *Bradford v. Bracken County*, Civil Action No. 09-115-DLB-JGW, 2012 WL 2178994, at *21 n.10 (E.D. Ky. June 13, 2012); *Colone v. Burge*, No. 00 C 9008, 2002 WL 31628205, at *3 (N.D. Ill. Nov. 21, 2002) (discussing cases). *Cf. St.*

*Hilaire v. City of Laconia*, 71 F.3d 20, 26 (1st Cir. 1995) (once it has been established that seizure occurred, court should examine actions and events leading up to seizure in relation to reasonableness).[1]

Nor does the use of a Taser constitute the use of deadly force. *E.g., Sandberg v. City of* Torrance, 456 Fed.Appx. 711, 713, 2011 WL 5154229, at **2 (9th Cir. Nov. 1, 2011) (referring to use of Taser as "use of non-deadly force"); *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011) (Murphy, J., concurring) (use of Taser is less than deadly force); *see also Parker v. Gerrish*, 547 F.3d 1, 6 (1st Cir. 2008) (noting that the South Portland police force lists a Taser below deadly force on use of force continuum). Thus, only the shot which hit the plaintiff need be considered under the standard applicable to the use of deadly force. The use of the Taser, which occurred after or during the seizure, should be reviewed under the general standard recited in *Cote.*

The parties do not agree with respect to the first element of the *Cote* test, the severity of the crime at issue. The plaintiff says that the crime at issue was "[e]luding," which she identifies as a felony offense. Opposition at 5. The defendants mention only operating under the influence, Motion at 2, which can be a felony under Maine law. *State v. Teachout*, 2011 ME 37, ¶¶ 3-4, 16 A.3d 155, 157-58. I see no basis upon which to distinguish between the two in terms of severity.

On the second element, whether the suspect presented an immediate threat to the safety of the officers or others, the defendants assert that the plaintiff "acted dangerously and without

[1] If Vega's firing of two rounds into the left front tire of the plaintiff's truck were to be considered for reasonableness, that standard is easily met. The plaintiff has admitted that she led Vega and Caouette on a high speed chase, Defendants' SMF ¶¶ 3-6, Plaintiff's Responsive SMF ¶¶ 3-6; that she crashed into a parked car and immediately began revving the engine at a high rate of speed, spinning the tires, and rocking the truck back and forth in an effort to free it, *id*. ¶¶ 6-9; that she ignored Vega's commands, *id*. ¶ 9; that the truck suddenly lurched backward and began to back up as Caouette was approaching it from the rear, *id*. ¶ 10; and that Vega believed that Caouette was in danger of being struck by the truck, *id*. ¶ 11. Under these circumstances, Vega's attempt to disable the vehicle by shooting into its front tire was eminently reasonable.

regard to the safety of the public, including anyone in the path of her escape" and that her "erratic operation of her truck placed Officers Vega and Caouette in imminent danger of serious bodily injury or death." Motion at 6. The plaintiff responds that "at the time of the altercation, the Plaintiff was in a motor vehicle which, although its engine was on and revving was not moving toward Defendant[]s Vega and Caouette or any other individual at the scene. In fact both Defendant Caouette and Defendant Vega were beside the vehicle at the time the firearms and Taser w[ere] deployed." Opposition at 5.

Of course, something more serious than an "altercation" was taking place when the officers shot at the plaintiff and when Caouette applied the Taser. The plaintiff supports her view of events with a citation to paragraphs 2 and 3 of her statement of material facts. *Id*. Those paragraphs, both of which are admitted by the defendants,[2] Defendant's Responsive SMF ¶¶ 2-3, provide, in full, as follows:

> 2. The majority of the shell casings found at the scene were found beside [] the path of travel of Plaintiff's vehicle.
> 3. The Taser used by Defendant Caouette generated a video recording of the deployment of the Taser.

Plaintiff's SMF ¶¶ 2-3 (citations omitted).

Taken as true for purposes of summary judgment, these two paragraphs do not support the assertion that, at the time the officers fired at the plaintiff, the truck was not moving toward either officer or any other individual. Nor do they establish that the officers were beside the truck at the time that they fired; the truck could have traveled past the area where the shell casings were found either before or after the officers fired.

[2] The defendants object to paragraph 2 of the plaintiff's statement of material facts and ask the court to strike it "[t]o the extent the fact is intended to support a conclusion that Defendants Caouette and Vega were never in the path of travel of the Plaintiff's vehicle at the time they fired shots at her[.]" Defendants' Responsive SMF ¶ 2. The court cannot read into the paragraph any additional facts that do not necessarily arise from the facts as stated, and the facts as stated do not support the conclusion for which the plaintiff offers the paragraph. Therefore, the objection is moot.

In addition, the plaintiff does not mention the use of the Taser in her discussion of the *Cote* factors. The use of the Taser does not present a close question, on the facts submitted. The plaintiff had refused to comply with the officers' orders to stop, crashed into a parked vehicle in an apartment complex's parking lot, backed out of the debris of that crash and lurched backward while Caouette was behind the vehicle, drove in reverse across the lawn and driveway of the apartment building and crashed into some trees at the top of an embankment, then continued to spin the tires and rev the engine until Vega reached in through the broken driver's side window, whereupon she physically resisted his efforts, pulling away from him and kicking at him. Defendants' SMF ¶¶ 2, 6-7, 9-10, 14-15, 17-18; Plaintiff's Responsive SMF ¶¶ 2, 6-7, 9-10, 14-15, 17-18. At the time the Taser was fired, the plaintiff posed a threat to the safety of the officers, and to the public, should she have succeeded in repulsing the officers and again been able to drive away. She was certainly attempting to evade arrest and to continue her flight from the officers. All of the *Cote* factors are met in a manner that can only lead to the conclusion that the firing of the Taser was reasonable under the circumstances.

That leaves the firing of the officers' weapons. The first and third *Cote* factors remain the same: the crime at issue was or could have been a felony,[3] and the plaintiff was attempting to evade arrest and continue her flight. The deadly force standard applies here: did the plaintiff's actions at the time the shots were fired "pose a significant threat of death or serious physical injury?" "At the time the officers fired at Plaintiff, her vehicle was in motion and the officers

[3] With respect to the seriousness of the offense, the First Circuit said in *Parker* that "[t]hough driving while intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault." 547 F.3d at 9. The First Circuit found it significant for the purpose of evaluating the first *Cote* element that the suspect "complied with [the officer's] requests and exited the vehicle voluntarily," so that he no longer posed the threat of driving while intoxicated. *Id*. The latter facts distinguish this case from *Parker*, but even if *Parker* were to require this court to construe the first element of the test in the plaintiff's favor, the second and third factors favor the defendants.

believed they were in danger of being run over or pinned against one of the nearby structures by Plaintiff." Defendants' SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14.

An officer who reasonably believed that a suspect might run over him or another officer with the suspect's vehicle is justified in using deadly force. *Estate of Shaw v. Sierra*, 336 Fed. Appx. 522, 524, 2010 WL 609640, at **1 (5th Cir. Feb. 17, 2010). While the reasonableness of the use of deadly force is a fact-specific inquiry, on the undisputed facts in the summary judgment record, and with consideration of paragraphs 2 and 3 of the plaintiff's statement of material facts, and given the Supreme Court's admonition to avoid second-guessing the split-second decisions of law enforcement officers, no reasonable jury could conclude that the officers' discharge of their weapons under the circumstances of this case was unreasonable.

Vega and Caouette are accordingly entitled to summary judgment on Counts I and IV.[4] Given this conclusion, there is no need to address the parties' arguments, Motion at 12-14, Opposition at 6-9, addressing the doctrine of qualified immunity. *See Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) ("In police misconduct cases, . . . the Supreme Court has used the same 'objectively reasonable' standard in describing both the constitutional test of liability, and the Court's own standard for qualified immunity.") (citations omitted).

**C. Count II**

Count II alleges that the City of Lewiston and Chief Bussiere failed to hire, train, supervise, and discipline police officers "to ensure that such officers would not use excessive force" and adopted policies inadequate to ensure that police officers "adhered to standards of constitutional law in their use of force." Complaint ¶¶ 45-50. Her opposition to the motion for summary judgment, however, mentions only an alleged lack of training of the three defendant

[4] I have already concluded that Rousseau is entitled to summary judgment on all claims asserted against him.

officers, asserting, without citation to any authority, that "only one firearm training in the seven years prior to this incident is deficient." Opposition at 11.

In the absence of a finding that the officers involved violated the plaintiff's constitutional rights, there can be no municipal liability. *Norton v. City of South Portland,* 831 F.Supp.2d 340, 366 (D. Me. 2011). *See also Hayden v. Grayson*, 134 F.3d 449, 456 & n. 13 (1st Cir. 1998). I will nonetheless address the merits of this count in case my recommendation concerning Counts I and IV is not adopted.

**1. City of Lewiston and Bussiere in His Official Capacity**

In order to establish municipal liability[5] under 42 U.S.C. § 1983 for failure to train, supervise, or discipline, or for faulty hiring or failure to adopt policies to prevent constitutional violations, the plaintiff must demonstrate that there was deliberate indifference to those responsibilities. *Cote*, 2012 WL 4510664, at *29. "The deliberate indifference standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action or inaction." *Id*. (citation and internal quotation marks omitted).

> To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. Furthermore, § 1983 imposes a causation requirement: a § 1983 plaintiff ordinarily must show that the municipality through its deliberate conduct was the moving force behind the injury alleged.

*Id*. (citations and internal punctuation omitted).

When the town's hiring practices are challenged, "before holding a municipality liable for a police officer's excessive force, we have required plaintiffs to prove that the municipality knew that the excessive force would be a plainly obvious consequence of hiring the officer." *Id*. (citations and internal quotation marks omitted). The plaintiff has made no such showing here.

---

[5] To the extent that Bussiere is sued in his official capacity, Complaint at 1, the court will treat the claims against him simultaneously with those asserted against the municipality. *Cote*, __ F.Supp.2d __, 2012 WL 4510664, at *29.

In order to be held liable under § 1983 for failure to train, a municipality "would first have to have been placed on notice of inappropriate actions by the officer and would have to do nothing or fail to take additional reasonable measures after it learned that its initial remedies were ineffective." *Id*. (citation and internal punctuation omitted). [6] In order to succeed on a claim of lack of training in general, a plaintiff must present evidence of a pattern of similar constitutional violations. *Id*. at 31. Again, the plaintiff in this case has offered no such evidence. Nor has she offered any evidence of failure to supervise or discipline Vega, Caouette, or Rousseau.

Remaining for consideration in connection with Count II is the plaintiff's policy-based allegation. There must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation in order for the plaintiff to recover on this claim; the policy or custom must have been the moving force behind the alleged constitutional violation. *Hayden*, 134 F.3d at 456. If the plaintiff relies on custom rather than a formally adopted municipal policy, the custom "must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

The plaintiff cites case law that applies these standards, but does not provide any evidence that would allow a reasonable factfinder to conclude that either exists in Lewiston. Opposition at 9-12. She appears to rely only on a "promulgated" policy concerning use of force and training, but does not address how that policy was the "moving force" behind Vega and Caouette's actions on the day in question, particularly since she alleges that the policy was not

[6] It is highly doubtful that the plaintiff could have provided such evidence in any event, as she admitted that "[p]rior to December 1, 2009, the Lewiston Police Department had not received complaints against either Officers Caouette, Vega or Rousseau specifically, or Lewiston Police Department officers generally, that would indicate that the Department had a problem with officers using unlawful force in connection with arrests and arising out of inadequate policies, training, supervision or discipline. Defendants' SMF ¶ 45; Plaintiff's Responsive SMF ¶ 45.

followed with respect to these officers. *Id*. She does not argue that it was a custom, as that term is defined for purposes of her claim, to ignore the written policy, a necessary underpinning to her claim, nor does she provide any factual allegations in her statement of material facts that would support the existence of such a custom.

**2. Bussiere's Individual Liability**

Bussiere, the chief of the Lewiston Police Department, was not present at the scene of the incident that gives rise to this action. The law requires that a claim asserted against him under section 1983 be based on his own acts or omissions. The plaintiff's opposition does not address Bussiere's individual liability at all, but, as noted earlier, summary judgment cannot be granted on the basis of that omission alone.

In section 1983 cases,

> supervisory liability typically arises in one of two ways: either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a [deprivation of a constitutional right]. In the latter scenario, . . . the analysis focuses on whether the supervisor's actions displayed deliberate indifference toward the right of third parties and had some causal connection to the subsequent tort. In either case, the plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation.

*Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (citations and internal quotation marks omitted).

Only the second alternative could possibly be at issue in this case. "The deliberate indifference required to establish a supervisory liability/failure to train claim cannot plausibly be

inferred from the mere existence of a poorly-implemented [policy.]" *Id*. at 49-50. That is all that the plaintiff offers in this case, and it is not enough.

The City of Lewiston and Bussiere are entitled to summary judgment on Count II.

**D. Count III**

Count III alleges Negligence against defendants Caouette, Rousseau, and Vega. Complaint ¶¶ 51-52. I have already concluded that Rousseau is entitled to summary judgment on all claims asserted against him. The defendants contend that Caouette and Vega are entitled to discretionary function immunity on this claim. Motion at 18-20.

Under 14 M.R.S.A. § 8111(1)(C), Maine governmental employees are immune from civil liability that might otherwise arise out of their performance of discretionary functions. Police officers' use of force is a discretionary act that is provided immunity by this statute, unless the conduct at issue is so egregious that it clearly exceeds any discretion that the officer could have possessed. *Berube v. Conley*, 506 F.3d 79, 86 (1st Cir. 2007). The application of the discretionary function immunity created by section 8111 is a question of law. *Moore v. City of Lewiston*, 596 A.2d 612, 616 (Me. 1991).

The plaintiff asserts that "discharging a firearm at a motor vehicle that is stuck" and "the employ of a Taser on a wounded individual" are actions by Vega and Caouette that clearly exceeded, as a matter of law, the scope of any discretion they could have possessed. Opposition at 13. However, the plaintiff has admitted that her truck was moving when the officers shot at it, Defendants' SMF 14; Plaintiff's Responsive SMF ¶ 14, and, even assuming that Caouette knew that the plaintiff was wounded when he fired the Taser, a fact which he disputes, Defendants' SMF ¶¶ 16, 30; Defendants' Responsive SMF ¶ 5, she nonetheless has admitted that, after she was hit, she continued to operate her truck and attempt to escape, showed no signs of having

been injured, and physically resisted Vega's efforts to control her, pulling away and kicking him. Defendants' SMF ¶¶ 15, 17-18; Plaintiff's Responsive SMF ¶¶ 15, 17-18.

These facts place Caouette's use of the Taser squarely within the scope of his discretion under the circumstances. *See generally Cerbelli v. City of New York*, No. 99-CV-6846 (ARR) (RML), 2008 WL 4449634, at *21-*22 (E.D.N.Y. Oct. 1, 2008).

The officer defendants are entitled to summary judgment on Count III.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED.**

## ***NOTICE***

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 7th day of February, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge